**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

PHILADELPHIA INDEMNITY INSURANCE CO., *

*Plaintiff*, *

v. * Civil Action No. RDB-26-1106

OLDFIELDS SCHOOL, INC., *

*Defendant*. *

* * * * * * * * * * * * *

**MEMORANDUM OPINION**

This action arises from a dispute regarding insurance coverage related to pending litigation in the Circuit Court for Baltimore County, *Jane Doe v. Oldfields School, Inc.*, Case No. C-03-CV-25-002414 (Md. Cir. Ct.) ("Doe Action"), which seeks relief for sexual abuse and harassment of a student that occurred between 2005 to 2009. On March 16, 2026, Plaintiff Philadelphia Indemnity Insurance Company ("Plaintiff" or "Philadelphia") initiated this action, on the basis of diversity jurisdiction, by filing a one-count complaint seeking a declaratory judgment that Philadelphia is not obligated to defend or indemnify Defendant Oldfields School, Inc. ("Defendant" or "Oldfields") in the underlying Doe Action. *See generally* (ECF No. 1). Philadelphia alleges that no coverage exists under the terms of the policy to give rise to a duty to defend or indemnify because the first instance of abuse occurred in 2005, which predates the policy period of August 1, 2008, to August 1, 2009. *See, e.g.*, (ECF No. 1 ¶¶ 17-19). Philadelphia also alleges that no coverage exists because Doe graduated from Oldfields and the alleged perpetrator was terminated from Oldfields before the policy period. (ECF No. 1 ¶¶ 20, 22, 28).

Presently pending before this Court are the Parties' cross-motions for summary judgment: (1) Plaintiff's Motion for Summary Judgment (ECF No. 14), seeking a declaration that Philadelphia has no duty to defend or indemnify Oldfields; and (2) Defendant's Cross-Motion for Partial Summary Judgment (ECF No. 18). Defendant's cross-motion asks the Court to declare that Philadelphia has a duty to defend Oldfields in the Doe Action, (ECF No. 18 at 6), and Defendant urges the Court to stay or dismiss the duty-to-indemnify portion of the claim because any ruling as to the duty to indemnify would be premature while the Doe Action is pending. (ECF No. 18 at 7-8).

The Court held an in-person hearing on the Parties' motions on October 9, 2026, at the conclusion of which the Court ruled from the bench. The Court DENIED Plaintiff's Motion for Summary Judgment (ECF No. 14) and GRANTED Defendant's Cross-Motion for Partial Summary Judgment (ECF No. 18), finding Philadelphia has a duty to defend Oldfields in the underlying litigation. The Court explained that the case is STAYED as to the duty to indemnify while the underlying Doe Action is pending. This Memorandum Opinion expounds upon the Court's reasoning.

## BACKGROUND

Plaintiff Philadelphia Indemnity Insurance Company ("Plaintiff" or "Philadelphia") is an insurance company organized in Pennsylvania and licensed to do business in the State of Maryland. (ECF No. 1 ¶ 1). Defendant Oldfields School, Inc., ("Defendant" or "Oldfields") is a private boarding school in Maryland. (ECF No. 1 ¶ 2). Philadelphia issued a commercial general liability insurance policy to Oldfields, Policy No. PHPK334185 ("the Policy"), with

effective dates of August 1, 2008, through August 1, 2009 (the "Policy Period"). (ECF No. 14 ¶ 8).

**A. The Underlying Complaint**

On May 20, 2025, Jane Doe filed a complaint in the Circuit Court for Baltimore County (Case No. C-03-CV-25-002414) ("Doe Complaint")[1], alleging that while a student at Oldfields, her teacher, David Ian Sprague, sexually harassed and abused her from 2005 to 2009. (ECF No. 1 ¶ 5; ECF No. 14 ¶¶ 1-2; ECF No. 14-1 ¶ 1). The Doe Complaint alleges that the harassment and abuse began in the spring of 2005, when Ms. Doe was fourteen, and continued for the duration of her time at Oldfields and after. (ECF No. 1 ¶ 6; ECF No. 14 ¶¶ 1-2; ECF No. 14-1 ¶¶ 17, 19-44). Sprague was terminated from Oldfields in the early winter or late spring of 2007, allegedly because of his relationship with Ms. Doe. (ECF No. 1 ¶ 7; ECF No. 14 ¶¶ 3-4; ECF No. 14-1 ¶ 32). In the summer of 2007, Sprague moved to South Carolina. (ECF No. 14 ¶ 4; ECF No. 14-1 ¶ 38). Ms. Doe graduated from Oldfields in the summer of 2008, before the Policy Period began on August 1, 2008. (ECF No. 1 ¶ 9; ECF No. 14 ¶¶ 5-7; ECF No. 14-1 ¶ 41).

Ms. Doe alleges that she "suffered and continues to suffer psychological and emotional injury because of the sexual abuse she endured while she was a minor at Oldfields." (ECF No. 14-1 ¶ 2). Ms. Doe seeks compensatory damages in excess of $75,000. (ECF No. 14-1, Prayer for Relief).

[1] The Doe Complaint is attached as Exhibit 1 to Plaintiff's Motion for Summary Judgment. (ECF No. 14-1).

Since at least August 2025, Philadelphia has defended Oldfields in the Doe Action pursuant to a reservation of rights. (ECF No. 14 ¶ 12, 8 n.2).

**B. The Policy**

The Policy contains a specific coverage form for "sexual or physical abuse or molestation vicarious liability" ("SPAM").[2] (ECF No. 14-2 at *32 (quotation modified as to capitalization)). The "Insuring Agreement" in the SPAM coverage form provides, in relevant part:

> 1. Insuring Agreement
>
> a. We will pay those sums that the insured is legally obligated to pay as "damages" because of "bodily injury" to which this insurance applies, if the insured is alleged to be liable for another person's "abusive conduct", by reason of:
> (1) the negligent:
>
> (a) employment;
> (b) selection;
> (c) investigation;
> (d) supervision;
> (e) reporting to the proper authorities, or failure to so report; or
> (f) retention; of any "employee", volunteer or any other person or persons for whom the insured is or ever was legally responsible . . . .

(ECF No. 14-2 at *32). The SPAM coverage form provides the following conditions for coverage:

> b. This insurance applies to "damages" because of "bodily injury" only if:
> (1) The "bodily injury" is caused by "abusive conduct["] that takes place in the "coverage territory";
> (2) The "bodily injury" occurs during the policy[.]

[2] The Policy also contains commercial general liability coverage, which the Parties confirmed at the hearing held on October 9, 2026, is not at issue in this dispute.

(ECF No. 14-2 at *32). In turn, the SPAM coverage form defines "abusive conduct," "bodily injury," and "coverage territory" as follows:

> 2. "Abusive conduct" means each, every and all actual, threatened or alleged acts of physical abuse. sexual abuse, sexual molestation or sexual misconduct performed by one person or two or more people acting together. Each, every and all actual, threatened or alleged acts of physical abuse, sexual abuse, sexual molestation or sexual misconduct committed by, participated in by, directed by, instigated by or knowingly allowed to happen by one or more persons shall be considered to be one "abusive conduct" regardless of:
>
> a. The number of injured parties;
>
> b. The period of time over which the acts of physical abuse, sexual abuse, sexual molestation or sexual misconduct took place; and
>
> c. The number of such acts or encounters.
>
> "Abusive conduct" consisting of or comprising more than one act of physical abuse, sexual abuse, sexual molestation or sexual misconduct shall be deemed to take place, for all purposes within the scope of this policy, at the time of the first such act or encounter.
>
> 3. "Bodily injury" means bodily injury, sickness or disease including emotional distress or anguish including death resulting therefrom.
>
> 4. "Coverage territory" means the United States of America (including its territories and possessions), Puerto Rico and Canada.

(ECF No. 14-2 at *36).

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian*

*Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Henry v. Purnell*, 652 F.3d 524, 548 (4th Cir. 2011)). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, a court's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter for resolution at trial. *Id.* at 249. Trial courts in the Fourth Circuit have an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Judd*, 718 F.3d at 312-13; *see also Scott v. Harris*, 550 U.S. 372, 380 (2007). This Court "must not weigh evidence or make credibility determinations." *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *accord Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 569 (4th Cir. 2015). Indeed, it is the function of the factfinder to resolve factual disputes, including issues of witness credibility. *See Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (citing *Anderson*, 477 U.S. at 249). To survive summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That is, the nonmoving party bears the burden to submit evidence that is "significantly probative" as to a genuine issue of material fact. *Anderson*, 477 U.S. at 249-50.

## ANALYSIS

Under Maryland law, "the interpretation of an insurance policy is governed by the same principles generally applicable to the construction of other contracts." *Cordish Companies, Inc. v. Affiliated FM Ins. Co.*, 573 F. Supp. 3d 977, 993 (D. Md. 2021), *aff'd*, No. 21-2055, 2022 WL 1114373 (4th Cir. Apr. 14, 2022) (collecting cases). The "primary principle of construction is to apply the terms of the insurance contract itself." *Universal Underwriters Ins. Co. v. Lowe*, 135 Md. App. 122, 137 (2000) (quoting *Bausch & Lomb v. Utica Mutual Ins. Co.*, 330 Md. 758, 779 (1993)).

As Judge Hollander of this Court explained, where the insurance policy is unambiguous, "the Court will assume the parties meant what they said," so that the Court will have "no alternative but to enforce those terms." *Cordish Companies, Inc.*, 573 F. Supp. 3d at 995 (citations omitted). Conversely, "[a] policy term is considered 'ambiguous if, to a reasonably prudent person, the term is susceptible to more than one meaning.'" *Id.* at 995 (quoting *Cole v. State Farm Mut. Ins. Co.*, 359 Md. 298, 306 (2000)). When the policy uses a defined term which differs from the ordinary meaning, the policy's definition controls. *Id.* at 995 (citing *Valliere v. Allstate Ins. Co.*, 324 Md. 139, 142 (1991); *Dutta v. State Farm Ins. Co.*, 363 Md. 540, 556 (2001)).

### A. Philadelphia has a duty to defend Oldfields in the underlying Doe Action.

Under Maryland law, the insurer has a duty to defend the insured if there are any allegations in the underlying litigation that could *potentially* be covered by the insurance policy. *Aetna Cas. & Surety Co. v. Cochran*, 337 Md. 98, 105 (1995). "The duty to defend exists 'even though the claim asserted against the insured cannot possibly succeed because either in law or

in fact there is no basis for a plaintiff's judgment.'" *Litz v. State Farm*, 346 Md. 217, 225 (1997) (quoting *Brohawn v. Transamerica Ins. Co.*, 276 Md. 396, 408-09 (1975)) (internal quotation omitted). This potentiality is typically established by the allegations in the underlying tort plaintiff's complaint. *Litz*, 346 Md. at 226 (quoting *Brohawn*, 276 Md. at 407). Any ambiguities are resolved in favor of finding a duty to defend the insured in the litigation. *Aetna Cas. & Surety Co.*, 337 Md. at 107 ("[W]here a potentiality of coverage is uncertain from the allegations of a complaint, any doubt must be resolved in favor of the insured."); *accord Springer v. Erie Ins. Exchange*, 439 Md. 142, 167 (2014) ("We also have consistently held that the duty to defend should be construed liberally in favor of the policyholder."). In essence, even if the underlying complaint does not include allegations which clearly bring the claim within or without the policy coverage, the insurer still must defend if there is a potentiality that the claim could be covered by the policy.

Here, Defendant has demonstrated a potentiality of coverage to trigger a duty to defend. The Doe Complaint alleges "abusive conduct" which caused "bodily injury" that falls or could potentially fall within the Policy Period of August 1, 2008 to August 1, 2009. Specifically, the Policy's SPAM coverage form covers damages from "bodily injury" that occurs during the Policy Period:

> a. We will pay **those sums that the insured is legally obligated to pay as "damages" because of "bodily injury" to which this insurance applies**, if the insured is alleged to be liable for another person's "abusive conduct", by reason of:
>
> (1) the negligent:
>
> (a) employment;
>
> (b) selection;

> (c) investigation;
>
> (d) supervision;
>
> (e) reporting to the proper authorities, or the failure to so report; or
>
> (f) retention; of any "employee", volunteer or other person or persons for whom the insured is or ever was legally responsible . . . .

(ECF No. 14-2 at *32 (emphases added)). In turn, "bodily injury" is defined as "bodily injury, sickness or disease including emotional distress or anguish including death resulting therefrom." (ECF no. 14-2 at *36).

The SPAM coverage form provides that two conditions govern whether insurance applies to the "bodily injury":

> b. This **insurance applies to "damages" because of "bodily injury"** only if:
>
> (1) The "bodily injury" is caused by "abusive conduct[“] that takes place in the "coverage territory";
>
> (2) The **"bodily injury" occurs during the policy[.]**

(ECF No. 14-2 at *32 (emphases added)). The "coverage territory" is defined as "the United States of America (including its territories and possessions), Puerto Rico and Canada." (ECF No. 14-2 at *36). Taken together, the SPAM coverage form instructs that coverage extends to damages from "bodily injury," i.e. mental or emotional distress, which occurs during the Policy Period and to "bodily injury" which was caused by conduct occurring in any state.

As Defendant correctly notes, the underlying Doe Complaint satisfies these conditions. Ms. Doe alleges "bodily injury" during the policy period, including that she has seen a therapist since 2008 for the mental distress caused by the alleged abusive conduct. (ECF No. 14-1 ¶ 56);

(ECF No. 18 at 3-4). The Doe Complaint contains the following allegations of "bodily injury" potentially occurring in the policy period:

- Ms. Doe alleges that by her senior year at Oldfields (2007-2008), the alleged abuse caused her severe "psychological and emotional distress." (ECF No. 14-1 ¶ 41 ("By this point[(her senior year)], Mr. Sprague's abuse had severely affected Ms. Doe. She had difficulty sleeping, had panic attacks, and was constantly anxious."));

- Ms. Doe alleges that she has suffered "lasting harm" since the abuse. (*Id.* ¶ 53 ("The abuse inflicted significant and lasting harm on Ms. Doe's psychological and emotional wellbeing. She experiences severe, constant anxiety, intrusive memories, and emotional distress, and she has experienced panic attacks since the time of the abuse. At times, she has felt suicidal."));

- Ms. Doe alleges that in summer 2008, her "mental health deteriorated," forcing her to drop out of a program and seek mental health treatment. (*Id.* ¶ 42 ("Later that summer [of 2008], Ms. Doe's mental health deteriorated further and caused her to drop out of a pre-med summer program she was scheduled to attend. In 2008, she disclosed Mr. Sprague's abuse to her mother and to a therapist who she continued seeing until 2018.));

- Ms. Doe alleges that throughout her adult life, the alleged abuse has interfered with her intimate relationships until 2017. (*Id.* ¶ 55 ("Ms. Doe attributes a pattern of seeking relationships with older man [sic] to the early sexualization caused by Mr. Sprague's abuse which interfered with her ability to form and maintain healthy, intimate relationships until 2017.")); and

- She further alleges that she has had to see a therapist ever since. (*Id.* ¶ 56 ("Ms. Doe has seen a therapist since 2008 and will require continued mental health treatment as a result of Mr. Sprague's sexual abuse.)).

There is also no dispute that Ms. Doe has alleged that the "abusive conduct" took place in the "coverage territory." (*Compare* ECF No. 18 at 3, *with* ECF No. 19). The Doe Complaint alleges that Ms. Doe was repeatedly sexually abused by Sprague "while Ms. Doe was a high

school student at Oldfields," (ECF No. 14-1 ¶ 1), and that the "events giving rise to this claim occurred in Baltimore County, Maryland." (ECF No. 14-1 ¶ 5). Therefore, the allegations in the underlying Doe Complaint allege "bodily injury" within the Policy Period so that they may be potentially covered by this Policy.

Philadelphia's arguments do not counsel a different interpretation. Philadelphia contends that the SPAM coverage form could not potentially apply to Ms. Does's allegations because the "abusive conduct" started in 2005, before the Policy's start date. (ECF No. 14 at 7-9). Philadelphia's argument is premised on the definition of "abusive conduct," which provides, in relevant part, that the abuse "shall be deemed to take place, for all purposes within the scope of this policy, at the time of the first such act or encounter." (ECF No. 14-2 at *36).

However, as Defendant aptly notes, the SPAM coverage grant only requires that the "bodily injury" occur during the Policy Period; coverage does not turn on the timing of the "abusive conduct." (ECF No. 18 at 1-4). The SPAM coverage form makes this plain: it covers "sums that the insured is legally obligated to pay as **'damages' because of 'bodily injury' to which this insurance applies**." (Policy, ECF 14-2, at *32 ¶ 1(a.) (emphasis added)). Moreover, the two express conditions on the "bodily injury" to which the insurance applies do not concern the timing of "abusive conduct." (Policy, ECF No. 14-2 at *32 ¶ 1(b.)). First, the SPAM coverage form states that coverage "only" "applies" if "'bodily injury' occurs during the policy." (Policy, ECF No. 14-2 at *32 ¶ 1(b.)) Second, the only condition on the "abusive conduct" is that it must "tak[e] place in the 'coverage territory.'" (Policy, ECF No. 14-2 at *32 ¶ 1(b.)). To the extent that Philadelphia claims the timing requirement was incorporated by reference or implication into the SPAM coverage form, such an argument is "legally

insufficient" since any insurance exclusion "must be conspicuously, plainly, and clearly set forth in the policy." *Megonnell v. United States Auto. Ass'n.*, 368 Md. 633, 656 (2002) (quoting Eric Mills Holmes & Mark S. Rhodes, 2 Holmes's Appleman on Insurance § 7.2, at 276-81 (Eric Mills Holmes ed., West 1996)).

Philadelphia's alternative arguments are similarly unavailing. (ECF No. 14 at 11-12; ECF No. 19 at 2-5). Philadelphia contends that because Sprague was fired in 2007 and Doe graduated in 2008 before the Policy start date, Oldfields cannot be held vicariously liable for the abuse occurring during the Policy Period. *See, e.g.*, (ECF No. 19 at 2, 4). Pursuant to this argument, under the SPAM coverage form, the damages from the "bodily injury" are not those that Oldfields is "legally obligated to pay." (ECF No. 14-2 at *32). However, whether the insured can be held vicariously liable for the conduct goes to the merits of the underlying litigation and is not a proper question for this Court as it evaluates whether the allegations give rise to a potentiality for coverage. The Court is satisfied that a duty to defend exists based on a comparison of the SPAM coverage form and the Doe Complaint, which clearly alleges that Oldfields is vicariously liable for Sprague's conduct. *Litz*, 346 Md. at 225 ("The duty to defend exists 'even though 'the claim asserted against the insured cannot possibly succeed because either in law or in fact there is no basis for a plaintiff's judgment.'" (quoting *Brohawn*, 276 Md. at 409-10)).

The Court finds that Philadelphia has a duty to defend Oldfields in the underlying Doe Action. Accordingly, Philadelphia's Motion for Summary Judgment (ECF No. 14) is DENIED as to the duty to defend; and Defendant's Cross-Motion for Partial Summary Judgment (ECF No. 18) is GRANTED.

**B. The question of whether Philadelphia has a duty to indemnify Oldfields for damages awarded in the underlying Doe Action is premature.**

At the hearing, following the Court's ruling finding a potentiality for coverage and corresponding duty to defend, Philadelphia agreed with Oldfields that any decision as to the duty to indemnify would be premature. The Parties are, therefore, now in agreement that a stay should be entered on the duty to indemnify until the Doe Action is resolved. For the sake of thoroughness, the Court briefly addresses its decision regarding the duty to indemnify.

An insurer's duty to indemnify is "distinct conceptually" from an insured's duty to defend. *Walk v. Hartford Cas. Ins. Co.*, 382 Md. 1, 15 (2004). A duty to defend is "broader" and "depends only upon the facts as alleged." *Id.* at 15 (citing *Litz*, 346 Md. at 225). Meanwhile, a duty to indemnify "turns on a comparison of the ultimate findings of fact concerning the alleged occurrence with the policy coverage." *See USAA Cas. Ins. Co. v. Mummert*, 213 F. Supp. 2d 538, 541 (D. Md. 2002) (quoting *Steyer v. Westvaco Corp.*, 450 F. Supp. 384, 389 (D. Md.1978)); *see also id.* at 541-43 (granting summary judgment to insurer, finding no duty to indemnify for damages paid in settled case upon a comparison of the allegations to the policy). Courts within this Circuit frequently recognize that decisions about the duty to indemnify should be postponed until the underlying liability has been resolved. *See, e.g.*, *Trustgard Ins. Co. v. Collins*, 942 F.3d 195, 199-201 (4th Cir. 2019) ("[S]uits about the duty to indemnify—unlike the duty-to-defend suits—would ordinarily be advisory when the insured's liability remains undetermined" (citation omitted)); *Nautilus Ins. Co. v. BSA Ltd. Partnership*, 602 F.Supp.2d 641, 657 (2009) (declining to determine insurer's duty to indemnify until determination and calculation as to damages in the underlying action); *Hartford Cas. Ins. Co. v. Chase Title, Inc.*, 247 F. Supp. 2d 779, 780 n.1 (D. Md. 2003) ("I am deciding only that Hartford has a duty to

defend. It would be premature to determine whether it has a duty to indemnify until after the issues in the underlying class action have been resolved." (citing *Mut. Benefit Group v. Wise M. Bolt Co.*, 227 F.Supp.2d 469, 478-79 (D. Md. 2002))); *Mut. Benefit Group v. Wise M. Bolt Co.*, 227 F.Supp.2d 469, 478-79 (D. Md. 2002) (abstaining from declaring no duty to indemnify because it would require the court to determine liability "issues which are present in and would be finally resolved in the underlying action"); *Home Exterminating Co. v. Zurich-Am. Ins. Group*, 921 F. Supp. 318, 325 n.7 (D. Md. 1996) (similar). In accordance with these authorities, the Court finds that any decision regarding Philadelphia's duty to indemnify must be postponed until the underlying Doe Action is resolved.

The Court, therefore, STAYS the case as to the duty to indemnify.

## CONCLUSION

For the reasons stated above, the Court finds that Philadelphia has a duty to defend Oldfields in the underlying Doe Action. Therefore, Philadelphia's Motion for Summary Judgment (ECF No. 14) is DENIED; and Defendant's Cross-Motion for Partial Summary Judgment (ECF No. 18) is GRANTED. The Court STAYS the case only as to the duty to indemnify, which cannot be determined until the underlying Doe Action is resolved. The stay may be lifted upon notice by either Party within (30) days of the resolution of the Doe Action.

A separate Order follows.

Date: October 15, 2026

/s/
Richard D. Bennett
United States Senior District Judge